**U.S. COURT OF APPEALS CASE NO. 14-35677**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————

Rod Eslami;

*Appellant / Plaintiff,*

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, aka Fannie Mae; and
WELLS FARGO BANK, N.A.;

*Appellees / Defendants.*

————

**APPELLANT'S BRIEF**

————

From The United States District Court
For The District of Oregon
Honorable Ancer L. Haggerty

Case 13-CV-00837-HA

————

JESSE L. LONDON, OSB NO. 132730
888 WEST PARK ST.
EUGENE, OR 97401
TEL: 503-877-3107

*Attorney, Pro Bono Publico, for Appellant / Plaintiff*

*ROD ESLAMI*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................... iii

STATEMENT OF JURISDICTION ........................................1

STATEMENT OF THE ISSUES ...........................................1

STATEMENT OF THE CASE ..............................................2

STATEMENT OF FACTS....................................................3

SUMMARY OF THE ARGUMENT ......................................7

ARGUMENT .....................................................................9

    I.   Standard of Review. ............................................. 9

    II.   HOLA Preemption Does Not Apply to Defendants Who Are Not a Federal Savings Bank. ................................................... 10

    III.   HOLA Does Not Preempt Quiet Title Actions Regardless of Whether HOLA Preemption or NBA Preemption Applies................ 12

    IV.   HOLA Does Not Preempt The Court's Power to Give Equitable Relief. ................................................................ 15

    V.   HOLA Does Not Preempt Plaintiff's Quiet Title Action and Other Equitable Relief. ................................................. 18

        A.   In Oregon, Quiet Title is An Action in Equity, Not a State Law to Which HOLA Applies....................................... 18

i

      B.   Even if HOLA Applies, Dodd-Frank Act Preemption Applies . . 20

CONCLUSION ....................................................................................23

STATEMENT OF RELATED CASES....................................................24

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT.................25

CERTIFICATE OF SERVICE...............................................................26

# TABLE OF AUTHORITIES

**Cases**

*Albizo v. Wachovia Mortg.*, 2012 U.S. Dist. LEXIS 55985 (E.D. Cal. Apr. 19, 2012) ...............................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 ...............................................................10

*Barnett Bank of Macon County, N.A v.Nelson, Florida Insurance Commissioner*, 517 U.S. 25 (1996) ............................................................21

*Becker v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 29687 (E.D. Cal., Mar. 21, 2011) ...............................................................13, 14, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 ...............................................10

*Bowman v. Wells Fargo Home Mortg.*, 2014 U.S. Dist. LEXIS 65806 (N.D. Cal. May 13, 2014) ...............................................................................11

*Cerezo v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 110755 (N.D. Cal. Aug. 6, 2013) ...............................................................................11

*Coal. For ICANN Transparency, Inc. v. Verisign, Inc.*, 611 F.3d 495 (9th Cir. 2010) ...............................................................................9

*Copeland-Turner v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 1132 (D. Or. 2011) ...............................................................................11, 14

*Corral v. Select Portfolio Servicing, Inc.*, 2014 U.S. Dist. LEXIS 109524 (N.D. Cal. Aug. 7, 2014) ...............................................................10

*DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010)...11, 13

*Estate of Blettell v. Snider*, 834 P2d 505 (1992) ...............................................18

*Faulks v. Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 65808 (N.D. Cal. May 13, 2014) ...............................................................................11

*Gerber v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 15860 (D. Ariz. Feb. 9, 2012) ................................................................. passim

*Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903 (C.D. Cal. 1978) .......12

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).......16, 17, 24

*Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010)...................................................................................11, 17

*Haggarty v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 9962 (N.D. Cal. Feb. 2, 2011) ......................................................................................12

*Henning v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 133394 (D. Mass., September 13, 2013) .............................................................22

*Hixson v. Wells Fargo Bank NA*, 2014 U.S. Dist. LEXIS 108617 (N.D. Cal. Aug. 6, 2014)....................................................................................10

*Hopkins v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 72803 (E.D. Cal. May 22, 2013)..................................................................................11

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008)...................................10

*Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010) .........................................15

*McFarland v. JP Morgan Chase Bank*, 2014 U.S. Dist. LEXIS 62145 (C.D. Cal. Apr. 28, 2014)................................................................................11

*Moore v. Wells Fargo Bank*, 470 B.R. 390 (Bankr. S.D. W. Va. 2012) ................22

*Nicol v. Wells Fargo Bank, N.A.*, 2012 WL 775077 (D. Or. Mar. 8, 2012)............22

*Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063 (9th Cir. 2011)..................................9

*Parmer v. Wachovia*, No., 2011 U.S. Dist. LEXIS 43866 (N.D. Cal. Apr. 22, 2011) ......................................................................................12

*Penermon v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 81047 (N.D. Cal. June 11, 2014).................................................................................11

*Peterson v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 65797 (N.D. Cal. May 13, 2014)..................................................................................11

*Pierson v. Fisher*, 48 Or. 223 (1906)......................................................................20

*Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2014 U.S. Dist. LEXIS 27516
(N.D. Cal. Mar. 3, 2014) ...............................................................11

*Sarkar v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 12454 (N.D. Cal.,
Jan. 31, 2014) ............................................................................13

*Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008)........9, 13, 14, 17

*Sovereign Bank v. Sturgis*, 2012 WL 1014607 (D. Mass. Mar. 22, 2012)..............22

*Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009 U.S. Dist. LEXIS
86360 (N.D. Cal. 2012) .................................................................11

*Tompkins v. United Healthcare of New England*, 203 F.3d 90 (1st Cir. 2000) ......22

*Valverde v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 95590 (N.D.
Cal. Aug. 25, 2011) ....................................................................12

*Wyeth v. Levine*, 555 U.S. 555 (2009) ....................................................15

**Statutes**

12 U.S.C. § 1464(a) .........................................................................12

12 U.S.C. § 1465(b) .........................................................................13

12 U.S.C. § 25b(a)(2) .......................................................................21

12 U.S.C. § 25b(b)(1)(A)-(C) ...............................................................21

12 U.S.C. § 5551 ........................................................................20, 21

12 U.S.C. §§ 1461-1470 .......................................................................2

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1332(a)(1) .......................................................................1

ORS 105.605 ..................................................................................18

ORS 86.735 ...............................................................................12, 19

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ...................................................................1

Federal Civil Rule 12(b)(6) ..................................................................9

Pub. L. No. 111-203, Title X § 1046(a) ....................................................15

Real Estate Disputes (Oregon CLE 1993).........................................21, 23

**Regulations**

12 C.F.R. § 545.2...................................................................................14

12 C.F.R. § 560.2.......................................................................... passim

12 C.F.R. § 560.2(a) ...............................................................................14

12 C.F.R. § 7.4010(a) ...............................................................................24

## STATEMENT OF JURISDICTION

The United States District Court for the District of Oregon had subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity of citizenship). Plaintiff Rod Eslami is a citizen of Oregon.[1] Defendant Wells Fargo is National Bank and a citizen of South Dakota (its principal place of business).[2] Defendant Fannie Mae is a federally chartered corporation with its principal place of business in Washington, D.C.[3] The amount in controversy exceeds $75,000.[4]

After ruling on a Defendants' motion to dismiss[5], the District Court entered a judgment resolving all claims between Plaintiff and Defendants.[6] After that judgment was entered, no claims by or against any other party remained unresolved. Therefore, the judgment was a final decision appealable under 28 U.S.C. § 1291. Judgment was entered on July 22, 2014.[7] Plaintiff's notice of appeal was filed August 11, 2014, within the 30 days allowed by Fed. R. App. P. 4(a)(1)(A).[8]

## STATEMENT OF THE ISSUES

Whether the District Court erred by applying HOLA preemption of state statutory law as a basis to dismiss Plaintiff's quiet title and other claims for equitable relief against Defendants who are national banking associations?

---

[1] ER 22 ¶ 3 (Citations to the Excerpt of Record are abbreviated "ER").
[2] ER 22 ¶ 4.
[3] ER 22 ¶ 5.
[4] ER 22 ¶ 6.
[5] ER 13.
[6] ER 20.
[7] ER 20.
[8] ER 1.

## STATEMENT OF THE CASE

Having no remedy in state law, Appellant-Plaintiff filed an equitable action to quiet title on Plaintiff's property and for other equitable relief alleging that a trustee's deed and warranty deed affecting title were void.[9]  The prayer for relief asked the Court for a decree requiring Appellees-Defendants and others to set forth the nature of any claims against the Plaintiff's property.[10] Defendants filed a motion to dismiss for failure to state a claim[11] and, later, a motion for summary judgment.[12]

Defendants, a National Bank under the National Bank Act,[13] argued that the Home Owner's Loan Act of 1933 ("HOLA")[14], a Great Depression era act creating and governing only Federal Savings Banks ("FSB"), applied to preempt the equitable relief Plaintiff sought, although Defendants are not an FSB.  Plaintiff, proceeding *in forma pauperis*, was appointed pro bono counsel able and willing to serve after the motion for summary judgment was filed.[15]  Plaintiff argued that HOLA preemption cannot be raised as a defense by a National Bank and that, even if applicable, such preemption does not remove the equitable power of the court to grant relief not arising from state law, especially relief related to real property, not interfering with the lending and credit process.

On July 14, 2014, the District Court granted Defendants' motion to dismiss with prejudice and, therefore, did not reach the merits of the motion for summary

---

[9] Original Complaint, District Court Dkt. No. 1;  First Amended Complaint, ER 0026 ¶ 24; 0027 ¶¶ 25(c-d)(voiding deeds); 0027 ¶ 25(f)(other equitable relief).
[10] ER 007 ¶ 25(a).
[11] District Court Dkt. No. 15.
[12] District Court Dkt. No. 46.
[13] Pursuant to 12 U.S.C. §§ 21 et seq.
[14] 12 U.S.C. §§ 1461-1470.
[15] District Court Dkt. No. 64.

judgment, evidentiary objections, or other pending motions to amend the complaint.[16]  The District Court granted judgment in favor of Defendants on July 22, 2014.[17]

## STATEMENT OF FACTS

On or about April 29, 2005 Plaintiff, Rod Eslami, refinanced his home with World Savings Bank, F.S.B. ("WSB"), a Federal Savings Bank.[18]  In early 2009, at an already advanced age, Mr. Eslami's business as a consulting engineer collapsed as a result of the national financial crisis[19] wherein conduct by Defendants, Wells Fargo, along with four other National Banks, "were at the heart of the financial crisis."[20]  Consequently, due to Mr. Eslami's loss of employment, Mr. Eslami failed to make three payments on his home loan.[21] The entire saga leading to Plaintiff's need to seek remedies began when Defendants refused Mr. Eslami's tender of a full payment of all his mortgage arrears in the fourth month of his financial hardship.[22] Defendants then placed Mr. Eslami's loan in default[23], thus putting Mr. Eslami on the road to foreclosure that might have been avoided from the start. This pattern of refusal to accept tendered payment of arrears in order to trigger default was one of the common practices that the Attorneys General tried to address with the National Mortgage Settlement Agreement.

---

[16] ER 0013.
[17] District Court Dkt. No. 83.
[18] ER 0028 ¶ 2.
[19] ER 0028 ¶ 3; ER 0030 ¶ 15.
[20] *See* About The Settlement, National Mortgage Settlement Agreement ("NMSA"), http://www.nationalmortgagesettlement.com/about.
[21] ER 0029 ¶ 4.
[22] ER 0029 ¶ 5.
[23] ER 0029 ¶ 5.

From late 2009 until late 2011, Mr. Eslami submitted nine applications to Defendants seeking a Home Affordable Mortgage Program ("HAMP") loan modification to save his home.[24]  In each instance, Defendants prevented Mr. Eslami from completing a HAMP modification or improperly failed to approve a modification for which Plaintiff was qualified using such tactics as losing documents or asking for additional, but irrelevant, documentation on shortened timelines and then forcing Plaintiff to start the application process over again.[25] For example, after opening a new application by telephone in August 2011, Defendants did not provide any documents that Plaintiff needed to apply until November 2011, after which Defendants imposed a strict deadline to complete the application.[26]  Like the failure to accept tender of arrears, the tactics to prevent successful modification of loans in favor of foreclosure was another common practice targeted by the NMSA.[27]

In an effort to protect against Defendants' tactics, Mr. Eslami entreated both United States Senator Merkley and Oregon Senator Haas to intervene.[28]  Both public officials wrote to Defendants asking that Defendants act in good faith and find alternatives to foreclosure in Mr. Eslami's case.[29]  In response, Defendants either summarily refused to reconsider the actions taken in pursuit of foreclosure or misrepresented to Plaintiff and to the public officials that Mr. Eslami failed to qualify for HAMP modification.[30]

---

[24] ER 0029 ¶ 6.
[25] ER 0029 ¶ 7.
[26] ER 0029 ¶ 8.
[27] *See supra* n. 20.
[28] ER 0029-30 ¶¶ 9-13.
[29] ER 0029-30 ¶¶ 9-13.
[30] ER 0029-30 ¶¶ 10, 12.

Mr. Eslami's house was sold via a non-judicial trustee sale on January 19, 2012, and the trustee purported to convey title to Wells Fargo by trustee's deed on January 23, 2013.[31] Wells Fargo then purported to transfer the property by warranty deed to Fannie Mae on December 5, 2012.[32] Both Wells Fargo and Fannie Mae claim an interest adverse to Plaintiff.[33] Defendant Wells Fargo is a National Bank.[34] However, World Savings Bank, F.S.B. is alleged to have prepared a document assigning the loan to Fannie Mae, but this assignment was not recorded in accordance with Oregon Trust Deed Act before foreclosure resulting in a void deed.[35] In an order to prevent the sale by operation of the automatic stay, Plaintiff filed for bankruptcy protection on January 19, 2012, but he was unfortunately not able to file until two hours after the trustee's sale had completed.[36]

After the sale of Mr. Eslami's home, Senator Haas wrote to Defendants expressing dissatisfaction that Defendants ignored previous requests to modify the loan and that Defendants' actions hurt the State of Oregon by leaving empty, foreclosed homes after a clear case of "dual tracking" in Mr. Eslami's case.[37] Dual Tracking is the practice of continuing a foreclosure action while an active loan modification is being considered. Regulators ended this practice also via NMSA.[38] Defendants responded that, despite the "dual tracking," Defendants would not

---

[31] ER 0023 ¶ 12.
[32] ER 0024 ¶ 13.
[33] ER 0023 ¶ 11.
[34] List of National Banks; Wells Fargo, Charter # 1 (*available at* http://www.occ.gov/topics/licensing/national-bank-lists/national-by-name-pdf.pdf, last checked 2/11/2015.)
[35] ER 0024 ¶ 16; ER 0026 ¶ 23.
[36] ER 0035.
[37] ER 0030 ¶¶ 11, 13.
[38] *See supra* n. 20.

rescind the sale.[39] Defendants' actions in Mr. Eslami's case are not, by any means, unique to this case and the Court may easily take notice of similar cases.[40] After an independent review of Defendants' actions against Mr. Eslami, NMSA regulators found that Ms. Eslami's case warranted a payment in excess of the minimum amounts due to the specific abuses in Mr. Eslami's case, but only awarded a small sum of $2,000.[41] As of April 2012, the terms of the NMSA force Defendants to conform to certain standards and processes that correct the abuses in HAMP modifications and prohibit "dual tracking."[42] Fortunately for Defendants, and quite unfortunately for Mr. Eslami, Defendants were able to foreclose and sell Ms. Eslami's home just a few months before the terms of the NMSA would have

---

[39] ER 0030 ¶ 12.

[40] ER 0060 ¶ 58.  By way of example of such "unfair and deceptive" HAMP modification tactics include:

> [Paragraph] 58.  (b) failing to gather or losing loan modification application documentation and other paper work;
> …
> (g) wrongfully denying modification applications;
> …
> (o) miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;
> …
> (p) misleading borrowers by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;
> (q) failing to properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance.

[41] ER 0030 ¶ 14.

[42] ER 0063.

6

likely constrained Defendants to allow Mr. Eslami's HAMP modification including the possibility of principal reduction.[43]

Ms. Eslami's situation is extremely burdensome. Mr. Eslami's advanced age makes it difficult to find employment. Moreover, Mr. Eslami must financially support and care for his wife and daughter, both of whom are diagnosed with schizophrenia.[44] Mr. Eslami's entire life savings are in his home.[45] A week before Thanksgiving, on or about November 11, 2014, Mr. Eslami was evicted from his home while the instant appeal was proceeding given Mr. Eslami's inability to afford to post bond on appeal.[46]

## SUMMARY OF THE ARGUMENT

Since the first historic devastation of the single family home market caused by large national banks on Wall Street in the wake the Great Depression, HOLA and its preemption provisions have only applied to shield Federal Savings Banks given their special mandate to encourage home ownership and keep families in their home in order to protect their life savings. The intent of the special protections for FSB's against the influence of state law and the larger banks that are well-funded enough to influence the making of state law is illustrated perhaps best in the classic film, "It's a Wonderful Life." Set in the depression era, the "Ol' Bailey Savings & Loan," an FSB, with its mission to protect small home-owners stands in sharp contrast to "Potter's Bank," a much larger, well-funded, and politically influential bank within the state that seeks to take over Bailey's in the shock of the stock market crashes and foreclose on Bailey's home owners. To prevent interference through political and financial mechanisms establishing law

---

[43] ER 0060.
[44] ER 0030 ¶ 15.
[45] ER 0030 ¶ 16.
[46] Circuit Court of Washington County, Oregon, Case # C10679EV.

that would thwart the success of FSB's on a state level, the U.S. Congress established a national scheme through HOLA in 1933 with the powerful shield of preemption.

Defendants, as in the classic film, claim that by having been able to shrewdly acquire the loans of a failed FSB in the wake of the current financial crisis brought on by large banks, Defendants, as a National Bank, acquire the special shield of the FSB, although they share no mandate to protect home ownership and are otherwise regulated by an entirely different legislative scheme. Defendants acquired Mr. Eslami's loan from World Savings Bank, FSB, when it failed and used the FSB's shield as a sword to drive Mr. Eslami out of his home and took his life savings using a series of tactics, which they do not deny.

The Ninth Circuit has yet to give any definitive guidance on the issue of whether a National Bank may acquire the FSB's HOLA preemption shield and there are an increasing number of cases in the District Courts that must address the issue. However, the weight of authority and common sense has held that HOLA preemption does not "stick" to loans acquired by National Banks and is unavailable as a defense in a motion to dismiss. *Gerber v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 15860 (D. Ariz. Feb. 9, 2012). Because many of these HOLA preemption cases are still in the pipeline from the housing market disaster, the Ninth Circuit should provide guidance and follow the simple rule that National Banks cannot use HOLA preemption.

Even where HOLA preemption is available to a bank, the preemption, though wide in scope, has always been limited to the preemption of state statutes that effect lending and credit practices which hinder FSB growth and success. HOLA preemption was never envisioned at the time it was adopted when courts of equity and law had yet to merge, nor as amended, to displace a state court's equitable powers, including an action to quiet title or other equitable relief. In

Oregon, a quiet title action is a creature of equity and not state statute, such that HOLA does not preempt actions in equity.

The broad HOLA preemption analysis that was applied by the Office of Thrift Supervision, which regulated FSB's, has recently been narrowed by the Dodd-Frank amendments. Under the new Dodd-Frank analysis issued by regulators, neither an equitable quiet title action, nor an action at law directly challenging non-lending aspects of a foreclosure would be preempted. Although it is unclear whether Dodd-Frank analysis should be applied retroactively, applying the narrower analysis to cases such as the one at bar arising before the amendments makes sense from a public policy and judicial economy standpoint. Without retroactivity, courts will need to manage two sets of rules for the many foreclosure oriented cases still to be decided from the housing crash. However, because the majority of cases are brought by National Banks who acquired FSB loans, not applying HOLA preemption in such cases prevents the necessity to consider retroactivity.

## ARGUMENT

### I.    Standard of Review.

A District Court's dismissal for failure to state a claim under Federal Civil Rule 12(b)(6) is reviewed *de novo*. *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1069 (9th Cir. 2011). Issues of statutory interpretation and preemption are reviewed *de novo*. *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Coal. For ICANN Transparency, Inc. v. Verisign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). The Court need not accept as true "allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**II.    HOLA Preemption Does Not Apply to Defendants Who Are Not a Federal Savings Bank.**

The District erred as a matter of law when it applied HOLA preemption to Wells Fargo, a National Bank, as the sole basis for granting Defendants' motion to dismiss.  Citing only two isolated District level cases from 2010 and 2011, the District Court opined that "[t]he great weight of authority" credited Defendants' argument that HOLA preemption "sticks" to the loan acquired from the ashes of World Savings Bank, an FSB.[47]  However, in 2012, the *Gerber* court extensively analyzed the issue and held that "[t]he plain language of [12 C.F.R.] § 560.2 demonstrates that this argument is without merit."  *Gerber v. Wells Fargo, N.A.*, 2012 U.S. Dist. LEXIS 15860, *9 (D. Ariz., Feb. 9, 2012).

In the Ninth Circuit, the *Gerber* decision has been followed or cited for authority by twelve (12) of the seventeen (17) reported District level cases and criticized in only three (3).[48]  Quite contrary to the District Court's legal

---

[47] ER 0016-17.

[48] Followed or cited by:  *Corral v. Select Portfolio Servicing, Inc.*, 2014 U.S. Dist. LEXIS 109524 (N.D. Cal. Aug. 7, 2014); *Hixson v. Wells Fargo Bank NA*, 2014 U.S. Dist. LEXIS 108617 (N.D. Cal. Aug. 6, 2014); *Penermon v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 81047 (N.D. Cal. June 11, 2014); *Faulks v.*

conclusion, the overwhelming authority, in fact, supports *Gerber*'s holding that National Banks do not inherit HOLA preemption from dead FSB's.

The *Gerber* court's reasoning is legally astute and well reasoned from a public policy standpoint. In that case, the court held that, applying Arizona's Consumer Fraud Act to Wells Fargo, "would not affect the 'operations' of a federal savings association -- and especially not the 'lending operations' -- because Wells Fargo is not a federal savings association." *Id.* The *Gerber* court rejected the very same cases the District Court cited in the instant case, *Copeland-Turner* and *Guerrero,*[49] for the proposition that Wells Fargo enjoys HOLA preemption. *Id.* The *Gerber* court concluded that *Copeland-Turner*[50] and *Guerrero* themselves cited "as authority for [the HOLA preemption "sticking"] proposition, … either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire."[51] *Id.* The court put the matter

*Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 65808 (N.D. Cal. May 13, 2014); *Bowman v. Wells Fargo Home Mortg.*, 2014 U.S. Dist. LEXIS 65806 (N.D. Cal. May 13, 2014); *Peterson v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 65797 (N.D. Cal. May 13, 2014); *McFarland v. JP Morgan Chase Bank*, 2014 U.S. Dist. LEXIS 62145 (C.D. Cal. Apr. 28, 2014); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2014 U.S. Dist. LEXIS 27516 (N.D. Cal. Mar. 3, 2014); *Cerezo v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 110755 (N.D. Cal. Aug. 6, 2013); *Hopkins v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 72803 (E.D. Cal. May 22, 2013); *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 2012 U.S. Dist. LEXIS 86360 (N.D. Cal. 2012); *Albizo v. Wachovia Mortg.*, 2012 U.S. Dist. LEXIS 55985 (E.D. Cal. Apr. 19, 2012).

[49] *Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010).

[50] *Copeland-Turner v. Wells Fargo Bank*, N.A., 800 F. Supp. 2d 1132 (D. Or. 2011)

[51] Among the cases lacking any real support for the proposition that Wells Fargo enjoys HOLA preemption, the court cited *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010); *Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010); *Valverde v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 95590, at *4 (N.D. Cal. Aug. 25, 2011);

clearly, holding that "preemption is not some sort of asset that can be bargained, sold, or transferred. HOLA preemption was created by the OTS for the benefit of federal savings associations, and § 560.2 plainly seeks to avoid burdening the operations of federal savings associations. Wells Fargo is not a federal savings association, and its cited cases are therefore not persuasive. HOLA preemption does not apply to Wells Fargo." *Id.* at *10.

## III. HOLA Does Not Preempt Quiet Title Actions Regardless of Whether HOLA Preemption or NBA Preemption Applies.

The District Court erred as a matter of law when it held that, to the extent that Plaintiff made a claim under ORS 86.735 rather than a quiet title clam, any case touching on foreclosure is preempted by HOLA.[52] HOLA granted the Office of Thrift Supervision ("OTS") the power, "under such regulations as [it] may prescribe - to provide for the organization, incorporation, examination, operation, and regulation of . . . Federal savings associations . . . ." 12 U.S.C. § 1464(a). The OTS may "prescribe a nationwide system of operation, supervision, and regulation which would apply to all federal associations." *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 909 (C.D. Cal. 1978). The OTS regulations may preempt "any state law purporting to address the subject of the operations of a federal savings association." 12 C.F.R. § 545.2. The OTS promulgated regulations wherein the "OTS hereby occupies the entire field of *lending regulation* for federal savings associations..." and that a federal savings bank, "may *extend credit* as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their *credit activities*." 12

*Parmer v. Wachovia, No.*, 2011 U.S. Dist. LEXIS 43866, at *1 (N.D. Cal. Apr. 22, 2011); and *Haggarty v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 9962, at *4 (N.D. Cal. Feb. 2, 2011).
[52] ER 0018.

C.F.R. § 560.2(a) (emphasis added).   However, in 2010, Dodd-Frank transferred regulatory power from the OTS to the Office of the Comptroller of Currency ("OCC") and amended 12 U.S.C. § 1465(b) of HOLA to provide that "[n]otwithstanding the authorities granted under sections 1463  and 1464  of this title, this chapter does not occupy the field in any area of State law."  Pub. L. No. 111-203, Title X § 1046(a).

Under OTS analysis, "HOLA's preemption of state laws affecting federal savings associations is not absolute.  Section 560.2(c) carves out state laws that 'only *incidentally* affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of *paragraph (a)* of this section.'" *Becker v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS  29687 at *22-23 (E.D. Cal., Mar. 21, 2011)(*citing* 12 C.F.R. § 560.2(c); *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004-06 (9th Cir. 2008)("Section 560.2(c) provides that state laws of general applicability only incidentally affecting federal savings associations are not preempted."); *accord  DeLeon v. Wells Fargo Bank, N.A.*,729 F.Supp.2d 2011 U.S. Dist. LEXIS 29687, 1119, 1125 (N.D. Cal. 2010)).

Section 560.2(c)(2) explicitly carves out preemption relating to real property.  No legal entities could be more of the type relating to real property than recording statutes and quiet title actions.   District Courts in the Ninth Circuit have held that quiet title actions "are firmly ground in state property law and any impact they might have on Wells Fargo's lending operations is purely incidental." *Sarkar v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 12454 (N.D. Cal., Jan. 31, 2014) at * 7-8.  Other courts have reached the same conclusion that "[c]ertain types of state laws may escape preemption -- e.g., real property law and torts – if 'they only incidentally affect the lending operations of Federal savings associations.'" *Gerber* 2012 U.S. Dist. LEXIS 15860, *8.  While *Gerber* ultimately analyzed exceptions to preemption under Section 34, the language of Section 560.2(c)(2) has

13

more exceptions than Section 34 and specifically makes an exception for real property law.

Before the Dodd-Frank Amendments, the Ninth Circuit provided a framework in *Silvas* to determine whether a law of general applicability was preempted as it was applied, beginning with a first step to determine if the law "arise[s] from a 'state law purporting to address the subject of the operations of a federal savings association.'" *Becker*, 2011 U.S. Dist. LEXIS 29687 at *23 (*citing Silvas*, 514 F.3d at 1004-06). If so, the law is preempted only if specifically described in paragraph (b) of 12 C.F.R. § 560.2 that provides a list of types including, "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." *Id.* If the state law does not fit the list in paragraph (b), the analysis proceeds to the "next question" of whether "the type of law in question 'affects lending.'" *Id.* If the law does "affect[] lending," a presumption arises in favor of preemption that can rebutted under 12 C.F.R. § 560.2(c). *Id.*

In Oregon foreclosure cases involving National Banks, the *Silvas* framework is clearly distinguishable and should not be bluntly applied. In *Silvas*, the Ninth Circuit held that certain California Unfair Competition Law statutes were preempted by the HOLA. *Id. Silvas* was not a mortgage foreclosure case, it was not an Oregon case, and the defendant bank was an FSB. *See Copeland-Turner v. Wells Fargo Bank*, N.A., 800 F. Supp. 2d 1132 (D. Or. 2011). The case at bar is all the things that *Silvas* was not.

Courts in the Ninth Circuit have held that "foreclosure" is clearly not within the text of the list in paragraph (b) including "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." *Gerber*, 2012 U.S. Dist. LEXIS 15860, at *21. The *Gerber* court found Wells Fargo's arguments that "foreclosure" was within the list unpersuasive in the national banking context.

14

*Id.* Defendants argued that, even though "foreclosure" laws do not appear anywhere in the list, courts should read foreclosure into the list. *Id.* Defendants have argued specifically that "servicing" includes foreclosure. The *Gerber* court soundly held that the argument was not persuasive "because the list contains specificity concerning other phases of the loan's existence (e.g., 'processing,' 'origination') but did not list 'foreclosure,' and it is therefore difficult to assume that it meant to include it within a 'servicing' catch-all." *Id.* at *20-21. The court cited persuasive authority reasoning that in the context of HOLA, "if the OTS wanted to include foreclosure as within the preempted category of loan servicing, it would have been explicit*." Id.* (citing *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 231 (2010)).

Moreover, the *Gerber* court reasoned that "if 'foreclosure' lurks within 'servicing,' then the necessary implication of Well Fargo's argument is that 'types and features of state laws pertaining to' foreclosure are preempted. This would bring down the Deed of Trust Act and probably every state's laws regarding foreclosure. Reaching such a momentous conclusion would indeed require a showing that it was 'the clear and manifest purpose of Congress.'" *Id.* (*citing Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). The court also cited authority making clear that foreclosure has always been a matter of real property law and that there is no authority for the proposition that federal regulations would govern things such as initiation of foreclosure, notice of foreclosure sales, and redemption periods. *Id.* (*citing Mabry*, 185 Cal. App. 4th at 230-31).

## IV.   HOLA Does Not Preempt The Court's Power to Give Equitable Relief.

At most, HOLA, by its own terms was only ever intended to preempt state statutory remedies created to hinder FSB operation. In the widely discussed Supreme Court case, the majority in *Great-West Life & Annuity Ins. Co. v.*

*Knudson*, 534 U.S. 204 (2002), addressed "equitable remedies" and federal preemption in the context of ERISA plans, but did not limit the holding to that context. The Court held that the difference in context between preempting remedies at law or equity was critically important. *Id.* at 213-14. The Court held that the proper statutory interpretation required defining "law" and "equity" as very distinct remedies as those terms were understood in 1937 when the ERISA statute was passed. The Supreme Court held that only equitable relief was available because the Congress of 1937 had knowingly chosen to preempt only legal relief by *not* stating that it was available, while specifically allowing equitable relief because the Congress understood the key difference between preempting "laws" and preempting "equity". *See id at* 213-14, 221.

Similarly, HOLA is a 1933 law of the same era where law and equity were clearly delineated and Congress carefully adopted a scheme to preempt actions at law to fulfill the purpose of protecting FSB's from the interference of state lending law. Although addressing separate statutory matter, the *Great-West* holding seems to require that lower courts apply the same method of statutory construction to interpret HOLA's references to preemption *only of state "laws"* in the same textual context as the 1937 ERISA statute. Thus, HOLA should be construed to preempt only legal relief while allowing equitable relief because HOLA does not state that equitable remedies are preempted. The Congress of 1933 was well aware of the separate courts, procedures, burdens, and remedies for suits at law and equity. If the Congress had intended to swallow all the equitable remedies available in the state courts through HOLA in order to prevent courts from fashioning remedies in appropriate cases, it could have said so; but it did not.

Whereas some cases supporting preemption scattered through the District Courts of the Ninth Circuit go about contorting and contradicting themselves to interpret whether this or that foreclosure related statutory based legal remedy is

available under HOLA, the *Great-West v. Knudson* analysis is very clear, straightforward, and historically consistent, keeping the purpose of the statute in mind. Equitable remedies are always available where sufficiently pled and proven given the plaintiff has no remedy at law. The most obvious case of seeking an equitable remedy in the HOLA context is where HOLA itself preempts a legal remedy, leaving only an equitable one.

Separating law from equity is the interpretation that comports with Supreme Court precedent. The interpretation has the virtue of avoiding the backwards reasoning, seen in some of the cases, where the court ignores or re-labels the plaintiff's equitable claim and finds, first that a legal remedy under a statute is preempted on which the equitable claim is based, and therefore, that an equitable remedy based on the unavailable legal remedy cannot be had. The very point of an equitable remedy, of course, is to provide relief where no legal remedy is available. It does not matter so much why the legal remedy is not adequate or available, just that the legal remedy is not. The correct analysis supported by *Great-West* is that an equitable remedy *would only be unavailable* if a legal remedy *were available*. Doing the analysis backwards causes the preemption to swallow all legal and equitable remedies. If a state were to pass a law interfering with FSB's and created a remedy at law, a putative plaintiff suing an FSB under that law would have a legal remedy that was preempted by HOLA, and therefore such a case would be fairly dismissed.

As an example of the confusion between law and equity under HOLA, the *Guerrero* court begins its analysis by interpreting the *Silvas* framework to mean that the "first step is to determine if these *causes of action*, as applied, are the type of *state laws* contemplated." *Guerrero,* 2010 U.S. Dist. LEXIS 96261, at *9 (emphasis added). A cause of action is not the same as a state law. For example, an action in equity to quiet title or imposition of a constructive trust are not state

17

laws. Even if there is a statutory formulation for those remedies, they remain creatures of equity. Even the *Becker* court, whose analysis is otherwise fairly thorough, reasons backwards about an equitable action like quiet title. *Becker*, 2011 U.S. Dist. LEXIS 29687 at \*22-23. In dismissing the plaintiff's equitable claim to quiet title, the court reasons that because the plaintiff's allegations match an unavailable preempted statute, this implies that the equitable remedy is not available either. *Id*. The correct interpretation via *Great-West* is that the quiet title action *is available* because the legal remedy is not available. Equitable relief would not be warranted, for example, where the plaintiff alleged nothing more extraordinary than that the defendant did not adhere to the preempted statue. The equitable remedy should be granted, as usual, where equity was invoked and necessary to do what should be done and prevent injustice, but preemption of the unavailable remedy at law would not serve as a basis for dismissal.

## V. HOLA Does Not Preempt Plaintiff's Quiet Title Action and Other Equitable Relief.

### A. *In Oregon, Quiet Title is An Action in Equity, Not a State Law to Which HOLA Applies.*

In Oregon, an action to quiet title to real property is equitable in nature. *Estate of Blettell v. Snider*, 114 Or App 162, 164, 834 P2d 505 (1992). The Oregon Statute providing for quiet title actions, ORS 105.605[53], is "an expansion of the common-law equitable remedy." Real Estate Disputes (Oregon CLE 1993), p. 5-3. In order to sufficiently plead an equitable action to quiet title, a plaintiff

---

[53] ORS 105.605 provides in relevant part that "Any person claiming an interest or estate in real property not in the actual possession of another may maintain a suit *in equity* against another who claims an adverse interest or estate therein for the purpose of determining such conflicting or adverse claims, interests or estates." (emphasis added).

must plead: (1) that plaintiff has some ownership interest in the subject property; (2) a description of the property adequate to put adverse claimants on notice; (3) that defendants are not in actual possession; (4) that defendants claims are adverse to plaintiff; and (5) that plaintiff has no adequate remedy at law.

The District Court erred as a matter of law when the court failed to consider Plaintiff's equitable claims to quiet title, voiding of deeds, and other equitable relief. The only place the District Court even mentions "quiet title" in its decision dismissing the complaint is in the opening sentence of the opinion where the court conflates a quiet title action with a legal remedy pursuant to state law under ORS 86.735.[54] Instead of meeting the Plaintiff's equitable claim head on by analyzing whether each quiet title element is supported by an allegation, the court incorrectly focused on remedies at law under the Oregon Trust Deed Act ("OTDA") in ORS 86.735.[55] Plaintiff's complaint alleged each and every element required to maintain an equitable action to quiet title. Paragraph 3 of the complaint alleged Plaintiff's ownership interest.[56] Paragraph 8 described the subject property.[57] Paragraph 9 alleged that Defendants were not in possession.[58] Paragraph 11 alleged that Defendants' interests were adverse.[59] Paragraph 10 alleged that Plaintiff had no remedy at law.[60] Therefore, the quiet title action should have survived a motion to dismiss.

---

[54] "Plaintiff, Rod Eslami, brings this quiet title action <u>pursuant to</u> Oregon Revised Statute (ORS) 86.735(1) to challenge the non-judicial foreclosure of his home." ER 0013 (emphasis added). A quiet title action is, in no way, "pursuant to" statutory law, but brought in equity.
[55] ORS 86.735 (2011); renumbered by 2013 amendments to 86.752.
[56] ER 0022 ¶ 3.
[57] ER 0023 ¶ 8.
[58] ER 0023 ¶ 9.
[59] ER 0023 ¶ 11.
[60] ER 0023 ¶ 10.

Likewise the District Court erred by holding that Plaintiff's equitable claims to void deeds and for "other relief as may be equitable"[61] were preempted. The relief sought to void the Trustee's Deed and the Warranty Deed described in Paragraphs 25(c) and 25(d) of the Complaint were sufficiently pled because "[a] court of equity has discretionary jurisdiction to decree a wide range of miscellaneous relief" including alienation or encumbrance of property, as well as delivery or recordation of a document. Real Estate Disputes (Oregon CLE 1993), p. 5-16 (citing *Pierson v. Fisher*, 48 Or. 223, 225 (1906)). The District Court opined that "the court is powerless to grant plaintiff equitable relief on a claim that fails as a matter of law."[62] The District Court put the cart before the horse. When a Plaintiff has no remedy at law, the Plaintiff must proceed in equity; not vice-versa. The Ninth Circuit has never held that equitable claims may not stand alone in a complaint. In order to dismiss a complaint for failure to state a claim in equity, the District Court should have analyzed, under familiar maxims of equity, whether sufficient allegations were made out to invoke the court's traditional equitable power. Instead the court focused on only the Plaintiff's legal claims, ignoring his equitable ones.

### B. *Even if HOLA Applies, Dodd-Frank Act Preemption Applies.*

The District Court erred by failing to consider or apply Dodd-Frank preemption analysis. The Dodd-Frank Act, enacted July 21, 2010, made significant clarifications to HOLA preemption. Dodd-Frank only preempts state law that is inconsistent with its provisions. 12 U.S.C. § 5551. State laws are given broader scope by the provision that a "statute, regulation, order, or interpretation . . . in any State is not inconsistent with . . . this title if the protection that [it] affords to consumers is greater than the protection provided under this title." *Id*. The Act

---

[61] ER 0027 ¶¶ 25(c,d,f).
[62] ER 0018.

clarifies preemption standards by defining the term "state consumer financial law," which means "a State law that does not directly or indirectly discriminate against national banks and that directly and specifically regulates the manner, content, or terms and conditions of any financial transaction . . . or any account related thereto, with respect to a consumer." *Id.* at § 25b(a)(2). Both the National Bank Act and HOLA were amended to provide that consumer financial laws will be preempted only if: (1) application of the law would have a discriminatory effect on national banks;[63] (2) the law "prevents or significantly interferes" with the exercise by a national bank of its powers; or (iii) the law is preempted by another federal law. *Id.* at § 25b(b)(1)(A)-(C). The OCC promulgated a final rule on July 20, 2011, further clarifying the preemption standards to explicitly state that FSB's will be subject to the same preemption standards as National Banks. 12 C.F.R. § 7.4010(a).[64]

Applying the Dodd-Frank standards or even the previous preemption standard applicable to National Banks before Dodd-Frank, which were not field-preemptive, would likely result in holding against preemption in HOLA cases. Especially those case directly affecting the status of real property. Cases outside the Circuit have also noted that the Dodd Frank Act "significantly diminished the extent to which HOLA and its implementing regulations may preempt state law." *Sovereign Bank v. Sturgis*, No. 11-10601, 2012 WL 1014607 (D. Mass. Mar. 22, 2012). Inside the Circuit, for example, the OCC / NBA analysis portion of the *Gerber* decision regarding foreclosures related to trust deed act violations held that state law was not preempted. *Gerber*, 2012 U.S. Dist. LEXIS 15860, at *20-25.

---

[63] The standard for discriminatory effect is provided in *Barnett Bank of Macon County, N.A v.Nelson, Florida Insurance Commissioner*, 517 U.S. 25 (1996).
[64] 12 C.F.R. § 7.4010(a) provides that: "In accordance with section 1046 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (12 U.S.C. 25b), Federal savings associations and their subsidiaries shall be subject to the same laws and legal standards, including regulations

The retroactive effect of Dodd-Frank is an open question in the Ninth Circuit. Cases from other circuits have held that Dodd-Frank preemption "provisions could be applied in a cause of action brought prior to the Dodd-Frank Act's effective date" without working an impermissible retroactive effect. *Moore v. Wells Fargo Bank*, 470 B.R. 390 (Bankr. S.D. W. Va. 2012) at *3. However, concededly, some cases in the Ninth Circuit hold that while Dodd-Frank analysis might yield different results in HOLA cases, Dodd-Frank is not retroactive. *Nicol v. Wells Fargo Bank, N.A.*, 2012 WL 775077 (D. Or. Mar. 8, 2012).

Some cases have shown that because of Dodd-Frank, "[t]he technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived. *See, e.g., Tompkins v. United Healthcare of New England*, 203 F.3d 90, 97 (1st Cir. 2000)." *Henning v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 133394 (D. Mass., September 13, 2013) at *48.[65] In that case, the allegations of wrongdoing in the loan modification and foreclosure process were as egregious as those in Mr. Eslami's case. The court noted "[t]he disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme. These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong." *Id.* The court dared Wells Fargo in that case to come forward with a corporate resolution signed by its president and majority of its board to ratify the attorneys' use of the technical preemption defense. *Id.*

Because Dodd-Frank and supporting OCC rulings essentially only clarify aspects of the preemption analysis for HOLA preemption which were contorted in some cases by courts to incorrectly preempt legal and equitable remedies,

---

[65] The issue was not presented or decided whether HOLA preemption should be applied to Wells Fargo as a National Bank.

retroactive application is appropriate. Moreover, applying Dodd-Frank preemption retroactively prevents the application of two sets of rules based on the date of a bank transaction and promotes a primary purpose of act; to prevent the type of abuses that occurred to consumers during mortgage crisis.

## CONCLUSION

Although the weight of the authority at this time is clear that National Banks may not duck behind the specially crafted HOLA preemption shield when they pick the bones of a dead Federal Savings Bank, courts within the Circuit still lack authoritative guidance and are still occasionally reaching conflicting results on very similar facts. Twelve of the seventeen reported cases in the Ninth Circuit follow the holding in *Gerber* that HOLA preemption does not apply to Defendants. The holdings that follow down the road to preemption are often extremely inequitable for the unlucky families who sought out an FSB for its mission to help them, but have lost their entire life savings after being the subject of unscrupulous business practices by a National Bank. Because of the lack of clarity in the law, this result happened just because they were in front of the wrong court. The irony of using a law whose goal it is to nurture and support small family homeownership for the purpose of putting them on the street is palpable and inescapable. This is true so much more when considering that many of these loans from former FSB's that are, or will be, the subject of litigation would not be in court if the loan transactions, modifications, or foreclosures had occurred just after the National Mortgage Settlement Agreement was or just after Dodd-Frank. The District Court erred as a matter of law when it applied HOLA preemption for the benefit of Wells Fargo, a National Bank.

Even where HOLA preemption applies, it specifically does not apply to laws that related to real property which only incidentally affecting lending and credit

operations of a bank. Actions such as quiet title and those related to recording statutes are quintessential real property law. If claims of these types are not exceptions by Section 560.2(c)(2) reference to "real property," then the exceptions are clearly swallowed by the rule. Furthermore, the 1933 vintage of HOLA shows that the Congress intent was to only preempt legal remedies, not equitable ones. The *Great-West* case shows why the distinction is very important in federal law preemption cases dating from the era before merger of law and equity.

The judgment and order dismissing the case should be reversed and the case remanded.

DATED this 13th day of February, 2015.


BY:   /s/ Jesse L. London                    
        JESSE L. LONDON, OSB #132730


## STATEMENT OF RELATED CASES

Plaintiff-Appellant is unaware of any related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

Pursuant to Circuit Rule 32-1, I hereby certify that this brief complies with the word limitations set forth in FRAP 32(a)(7)(B) and Circuit Rule 28-4. This brief is proportionally spaced, has a typeface of 14 points, and contains 7,140 words.

DATED this 18th day of February, 2015.


BY: /s/ Jesse L. London
JESSE L. LONDON, OSB #132730

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2015, I caused a true copy of the foregoing Opening Brief to be served on the following parties by electronic means as indicated:

By electronic service:

Rod Eslami, Plaintiff          (myhello2you@msn.com)
Robert J. Bocko, Attorney for Defendants  (robert.bocko@kyl.com)
Molly Henry, Attorney for Defendants (molly.henry@kyl.com)

BY:   /s/ Jesse L. London
          JESSE L. LONDON, OSB #132730